Good morning and may it please the Court, Kirsten Ault for the United States. I'd like to reserve two minutes of my time for rebuttal. In this case, the agents and officers who were executing the search warrant did everything that they should have done. As the District Court correctly found... Well, but just a minute, did everything they should have done. Does the search warrant authorize the search of this particular home? Yes, Your Honor. In fact, specifically? Yes, Your Honor. Without a description? This actual mobile home was actually the mobile home that was identified as the gray mobile homes type structure that was specifically identified in the warrant's description. How do we know that in light of the other mobile home that was there? Can you say that? I mean, it's interesting because the District Court had trouble with that. The District Court did have trouble, Your Honor. However, if we look at the record, the only evidence in the record supports the finding, and we submit that the District Court did actually find that or conclude that it was the mobile home. In Excerpt Proof Record 66, the District Court says, and I admit it's not that clear, but does say that this is the mobile home that Deputy Holtz says was identified in the warrant. And that is, that finding is the only finding that would be supported in the record because, so there's one mobile home identified in the record, and the District Court says that's the gray mobile home type structure that's identified in the warrant. And as Deputy Holtz ---- But the home in which the defendant was found was white, I thought. Your Honor, it's so the home was white. However, if you go with what the information was that Deputy Holtz had before the execution of the warrant, and remember, they could not get on the property, the structures were not able to be seen from the road as the District Court found. So the only thing he had were these aerial maps, and I would encourage the Court to look at our reply brief. Well, but, no, he had, or somebody had the prior warrant request that had been requested of that same property that noted that there were two mobile homes. But as the District Court found, and as the evidence in the record shows, Deputy Holtz did not have that information until after he had sworn out the warrant. Well, but before the warrant was executed. Correct, Your Honor. However ---- And so ---- However, the original question was, was the mobile home that was identified in the warrant the mobile home where Mr. Alcazar Barajas was found? That's ---- The Deputy Holtz had two aerial images of the property from Google Maps when he was swearing out the warrant. Those two images are ---- I guess I understand where you're going. My biggest problem with this is this. It seems to me, and I'll make sure that I'm true, did anybody ever tell the judge there were two mobile homes? The magistrate judge, Your Honor? Yes. No, Your Honor, because Deputy Holtz did not know that at the time he swore out the warrant. So the magistrate judge didn't know there were two mobile homes, and we have some confusion about whether the mobile home in which the defendant was, was really the mobile home in the description. And if that is so, and the, then how can I be sure that the magistrate judge felt there was probable cause to search the home that was searched? Because the magistrate judge found that there was probable cause to search the entire ranch and all of the structures on the ranch. But that isn't enough, because if I look at canon, it says to the extent that a search of a guest room in a single-family residence, which is rented or used by the third party, requires a special warrant. So here I am applying canon to this case, and I'm saying the judge doesn't know there's two mobile homes. It's unclear that the mobile home which is in the warrant is where the defendant was, and nobody asked the magistrate if they could search both mobile homes. So, again, back to my question, how do I know that there's any probable cause here by the magistrate? Because, Your Honor, first we would submit that canon is not the correct lens through which to look at this case. Alexander is the correct lens through which to look at this case.  Because this is a single ranch with one gate, one lot. Kennedy. And this is a single family home in canon. Yes, Your Honor. With two structures on the property, and the Court found in canon. Two or more rooms in the single mobile, in the single family home. However, the Court in canon found that there's no way that the officers reasonably believe that the two structures were one piece of property, because they were enclosed in one fence, as in Alexander and as in this case. Well, but Alexander's, it seems like it may be distinguishable here, Ms. Alt, I think. Because in Alexander, if I recall correctly, the affidavit established the ranch was under common control of the suspect. I'm not sure that we have that here. We do have that here, Your Honor. Okay. And then also, law enforcement did not have access or knowledge of the property because of the rule setting. Here, your argument, even if you take what you say as correct, only takes you so far, because prior to the execution of the search, they did know, law enforcement did know that there were two mobile homes on the property. However, Your Honor, they did not know that those mobile homes belonged to different people, and indeed, there's no evidence in the record that they did. In fact, the Fresno Methamphetamine Task Force that had those earlier pictures reached exactly the same conclusion, as did the State court judge who issued the Fresno Methamphetamine Task Force warrant, that this was a single ranch under owned by one person under common ownership and control. The Fresno Methamphetamine Task Force warrant that identified both mobile homes also said that this was a single piece of property. That judge who issued the warrant in that case, with that additional information, also reached the same conclusion that it was one ranch under common control. And I think we know, because Judge D'Avola didn't rule in your favor, so we know what the weaknesses of your case are, but I want to kind of get on the record, we have limited time, but I want to get this, I think it's important, so that we understand the gist of your argument. So, you rely on Alexander because you think that to support your argument that the warrant authorized the search of the entire rural ranch property, is that correct? That is correct, Your Honor. All right, and then we've heard discussions about, so, if Cannon controls, that's not good for you. If Alexander controls, that's, and you're arguing that you fall within Alexander. So, it seems to be undisputed that between the time that the officers got the warrant and actually went out to execute the warrant, that they received an updated information that there were two mobile homes on there. And it seems to be undisputed that they didn't seek a refresh of the warrant or an expansion of the warrant or anything along those lines, right? Yes, Your Honor. And Judge d'Avila found that to be problematic. No, Your Honor. He didn't find that to be problematic? Your Honor, what Judge d'Avila found was, Judge d'Avila found that the moment that the officers, that Alcazar Barajas stepped outside of the mobile home, that the agents were lawfully on the ranch, that they lawfully went up to the mobile home, that there was no issue, no issue at all until Alcazar Barajas stepped outside of the mobile home looking as if he had just awakened. That was the moment that the district court found there was a problem. Okay. But we're going to look at this de novo, right? In terms of, so, Officer d'Avila also, I mean, Judge d'Avila also didn't hold a Franks hearing because he said there doesn't seem to be any indication that the warrant that was issued, that there was any false information in there, that there wasn't any omissions or anything along those lines. I would note that the second mobile home that the Fresno Methamphetamine Task Force identified, they identified as dilapidated, unoccupied, boarded up windows. So there was no indication, even to them, that that second mobile home was occupied, that it was a residence. In fact, they thought it wasn't. So they had the same information, that there was two potentially occupied structures that was given to the magistrate, in this case, the ranch house and one mobile home. So if there had been ten mobile homes on the property? There weren't, Your Honor. There were two. I'm just asking, though, I mean, but based on your argument, they should have been able to do all ten. Your Honor, but that may have been a changed circumstance that they may have needed to stop, but that's not this case. In this case, they approached the mobile home that was identified in the warrant. Is there anything in the record that would indicate that the officers had some sort of discussion or something? Oops, there's another mobile home, maybe we should go back or – and I'm asking this for purposes of, apparently, you made a Leon argument and an exigent circumstance argument, and did Judge d'Avila get to those at all? No, Your Honor. All right. So your first argument is it's the entire property in Alexander Controls. So if, let's say if we don't agree with you on that, are you relying on exigent  Public safety, Your Honor. And Leon? Leon, protective sleep and public safety, Your Honor. So for – Don't worry about that. If she's asking you questions, just answer. Well, I'm just trying to get the argument out. I know, but all I'm trying to tell her is she doesn't have to worry about her time when you're asking her questions. So can we do, since the district judge didn't do that analysis, didn't get to that, can we do the Leon – can we do the exceptions argument right here? Yes, Your Honor. Because the facts are undisputed? Is that what – what's your argument on that? I'm just – My argument on that is if you look at the facts that are undisputed, and I'm happy to go through what those are, then you can find – you can uphold the search, because you can find – the district court found that there was no issue until Alcazar Barajas stepped outside. However, there is simply no way that the officers could have known, and every officer who testified in this case said the same thing. They thought they were authorized to search that mobile home. There was nothing about it that indicated to them it was a separate, independent residence. And indeed, the only facts in the record that show it is are Alcazar Barajas's own declaration, which the district court disregarded because he refused to be cross-examined. Well, I'm going to talk about the Leon analysis because I want to make sure, if I do that, what the – okay, it's undisputed that the officers knew that there was a second mobile home there. Correct. So – but when you do the Leon analysis, the fact that they know that, how does that correlate to – is there any indication that – because you have to look at what an objective officer would have thought in terms of did they have a valid search warrant. So what is the – what is in front of us here to do the Leon analysis? Certainly, Your Honor. The fact that what the officers actually knew was that there was a second mobile home on the property that they believed was dilapidated, unoccupied, and boarded up, and possibly a methamphetamine laboratory. That's what they knew. And so when they approached the ranch, they knew they had a search warrant that authorized them to search the entire ranch. They knew there was a ranch – there were two potentially residential structures on that ranch. One mobile home and the ranch house. They knew when they showed up that there was a ranch house and there was a mobile home that could have or could not have been occupied. They knew that the ranch owner's cars had been seen at both mobile homes and at the ranch house. So they knew – But the basis for your search was to look for this fugitive, Mr. Barajas or – Medina something. Medina Barajas. Medina Barajas. Yes. Same name, but not related. Medina. We don't know whether he was related or not, Your Honor. Okay. The only evidence that I heard – But the record doesn't show that they're related. They have the same name. They have part of the same last name, Your Honor. But you don't know that they were – you would have put it in here if you thought they were related. Your Honor, there's simply no – the only evidence – Okay. That's fine. That's – Whether – there's no evidence whether there is – they are or not. Right. Okay. Fair. That's fair. But I'm just trying to figure out, how did the warrant establish that the fugitive that you were looking for controlled the entire ranch? Your Honor, that was not the finding. It was that the owner controlled the entire ranch. This was a warrant to search a third party's property, not the fugitive's property. And who was the owner here? Estelio Medina Barajas. And that is your basis that they could search the entire ranch? Because the magistrate judge authorized them to search the entire ranch because the magistrate judge found that it was under common ownership and control. And the only issue is whether something happened during the execution that meant that they, under Leon's exceptions, that it was so egregious that they had to realize that the magistrate's command, you go search this whole ranch, was no longer valid. And that's simply not the case. None of the four Leon exceptions apply. And in fact, the district court did not specifically address Leon, but in its different findings, the district court found that there was probable cause to search the entire ranch, found that the magistrate did not act as a rubber stamp, found that there were no false statements or omissions in the affidavit, and found that the ranch was identified sufficiently as the place that they were supposed to be searched. So none of the Leon exceptions apply here. And the district court's finding was that the mere fact of Alcazar Barajas stepping outside, looking as if he had just woken up, was so egregious that the officer should have realized that at that moment they had to stop. And that finding is simply not reasonable. And that is fundamentally our argument, which is that the district court just applied the wrong standard in this case. The standard is supposed to be not a --" and the district court repeatedly said, the agents did nothing wrong, I'm not finding they did anything wrong, I'm just looking at this with the benefit of hindsight. And that standard of looking at it with the benefit of hindsight, fly-spec-ing the details of the warrant based on what we know now as opposed to what the officers knew then, that the Supreme Court and this Court have repeatedly held, is not what the district court is supposed to do. Sotomayor, you said that the district court said they didn't do anything wrong, but the district court specifically had concerns that they didn't stop once they saw there was another mobile home. No, Your Honor. The district court did not find that that was the problem. The district court found that it wasn't until Alcazar Barajas stepped outside the site, excerpt of 11 --" excerpt of record 11 and 13. The district court found there was no way that they could have known, based on the aerial photographs he found, that, you know, he found that they could not have known until he stepped outside, and there's simply no reason why him stepping outside should have indicated to them that it was a separate residence. It was what they expected, was to find other people. I guess, after hearing everything, the district court, I think, had a difference of opinion than you did on that, because he specifically stated, well, I say specifically, there were many references when he was trying to figure out what happened here, that once they knew there was a second mobile home, and you could characterize it the way you characterize it, that the implication here is they should have stopped and gotten a warrant, whether that's when he stopped outside or whether it was before and when they knew. But he said it seemed like they knew, based on the other plans, that there was a second --" there was two mobile homes on the property. Sherryman-Hillman, that is not what he found, Your Honor. Specifically, at excerpt of record 11, he said, the court found, and what I was saying when we were last together, so this is at the final hearing, is that at that point, when they made contact with the defendant, that's the point where I think the problem occurred. When they made contact with the defendant, when he stepped out of the mobile home. And then again, at excerpt of record 13, he said, certainly when the defendant presented himself, that, as the evidence showed, would give rise to think he had been awakened. And on excerpt of record 30 to 31, he said, it's really at the threshold, as they were present at the mobile home, that is the problem. And at excerpt of record 83 to 84, he said, it's of no moment that the officers had better --" a better description of the property before the search. It was when Alcazar Barajas was revealed to be on the property that they should have known. So it was really the district court made the finding that it was of no moment that they had these better drawings beforehand. It was when he stepped outside, looking as if he had just awoken, the district court found they should have known. And this gets us back to Cannon, which is that even in Cannon and in Maryland v. Garrison, this Court and the Supreme Court found it wasn't until the officers got inside and they saw the indicia of living inside of the apartment that the officers should have known, even in Cannon. Well, it seems to me that I can use the same kind of analysis in saying Alexander doesn't apply here. Because in Alexander, the officers did not know about the existence of the trailer when they did everything. And when we got to this case, the officers did know the existence of two trailers. They knew exactly that there were two trailers. They knew what was described in the warrant. And they knew that now what you seem to be trying to get me to buy is that I should take a general description, even though there is a warrant with an accurate description of what is to be searched. And that's all I was trying to get you to deal with. And what I'm saying, Your Honor, is that what the Fresno — so what the warrant identified was it identified a mobile home trailer and the ranch house and several other storage shed type structures. What the Fresno Methamphetamine Task Force warrant identified was a ranch house, a apparently occupied mobile home, and an apparently dilapidated mobile home. So what we're talking about — You're not answering my question, really. The question was very simple. It seems to me that what was described here cannot be said to be the trailer which was searched. That is not correct, Your Honor. Well, I think it is. You've got two trailers. This was to be Hawaii — this was to be gray, and it wasn't. It had a different geographic location. It did not, Your Honor. To the northwest west. Your Honor — And it had a different access road to the left. No, Your Honor. It was not in a different location. And the district court went back and forth about where it was. But what I would point the Court to is the actual description in the — one of the things I think that the district court was confused about is the description in the warrant describes the corral as towards the front of the premises, but the mobile home as to the back of the house. And one thing that the district — So I'm supposed to disregard the district court's idea of the facts as to that particular issue? No, Your Honor. But what I would say is that the district court ultimately, at excerpt of Record 10, which is, again, at the very end of the district court's findings, said the mobile home, well, it could have been in front of the house, could have been behind the house, could have been next to the house, and found that to be of no moment. But what the warrant description actually described was — so the confusion arose from the fact that the house is actually turned sideways towards the road. So the mobile home trailer is actually behind the house and toward the back of the property. The — so when the deputy described the horse trailer, the horse corral, he described it in reference to the front of the premises, which is towards the road, but then described the trailer as behind the house, which is turned sideways to the road. Well, the trouble is, every time you and I talk about this, and that's why I haven't asked any further questions, it seems to me we're back at the same problem. And that's the problem I wanted you to describe. There was only one trailer which was to be searched. There were really two. The descriptions are very difficult to say that what was searched was really that which was in the warrant. And therefore, with two and not just one, and the description in the warrant not being exact, then the government wants to say, well, then forget the description. Let's just go for the general description of the property and let's search everything. So then when I get to that, then I say to myself, well, Cannon wouldn't let him do that. Alexander's not on point, because Alexander was about where officers don't even know about the existence of two trailers when they walk in there. But Cannon did let — And therefore, Alexander is not appropriate and can be distinguished. So I say to myself, where am I? That's why I've been asking those questions. Your Honor, where we are is that even in Cannon, what the court found was that the trailers on the property, because they were allowed to search the other part of that same building that was perfectly lawful, that was used as a storage area. And what the court found was it wasn't until they got inside that they should have realized. Oh, in other words, as my colleague suggested, if there had been ten trailers on there, as long as they had the general description of the property and one of the trailers was described, the government ought to be able to search whatever they dang well pleased. No, Your Honor, but if the ten — That's what your argument suggests. That is what you're arguing. No, Your Honor, because if the ten trailers all appeared to be storage shed-like structures, which were described in the warrant, they just — they didn't appear to be habitable, then sure, yes, they would be able to search. I don't think that is what your argument is. So not everyone thinks that's what your argument is. Well, what we're trying to do, frankly, Judge, is get her to distinguish what her argument is, because that seems what her argument is. Your Honor, my argument fundamentally is this. The trailer was described in the warrant, but it doesn't matter, because they were lawfully on — nobody is arguing they were not lawfully on the property. They were lawfully on the property. As the only problem that the district court found was when Alcazar Barajas stepped outside, they should have known that the trailer was occupied. But even just having it be occupied, they knew they were going to find other people on the ranch. And what we would cite Alexander for is the fact that people were sleeping under different roofs on a rural ranch does not automatically tell the officers that all of a sudden they need to stop. They were allowed to do what they did, which was go up to the trailer, knock on the door, identify themselves as police, ask if there were any people or guns in the trailer. When they learned there was a 3-year-old child in the trailer with a gun, they were morally obligated to go in, get the child, get the gun, and get out. And that is what they did. They thought they had a — But now the district court didn't rule on the accident circumstances on that, right? Not, Your Honor. Precisely because the district court found that it was the moment Alcazar Barajas stepped outside that was the problem, and then suppressed everything after that, including his statements that the child and the gun were inside the trailer. Well, what the district court was saying was the seizure happened before the exception arose. In other words — But I'm still not sure why the district court didn't make the Leon analysis. Because there can be — you can be wrong and hope that someone's wrong, and — but I agree, Your Honor. But did you ask the district court to make the Leon analysis? Because — We did, Your Honor. And what did the court say? I know you asked, but then when the court didn't — so did the court implicitly say, nothing saves you? Or what — The court simply didn't reach the issue. Didn't say anything, but was — but you made the argument. We did make the argument, Your Honor. Okay. Well, we've gone way over, but — so we'll — with the appellee, we'll take as much time as we need with you then, too. So — and if we have any questions after — you obviously don't have any rebuttal time left, but if anyone has any other questions, we'll do that. Thank you. Thank you. Good morning. Good morning, Your Honors. May it please the Court, Graham Archer with the Federal Defender's Office on behalf of Appellee Ramiro Alcazar Barajas. Your Honors, the defense and the district court had a very different view of the — the record in this case than the government does. The government has tried again and again in their briefing to distract from the district court's actual findings. The government cites only to Excerpt to Record 66 and indicates that that's the only finding made by the district court when, in fact, that's not correct. Excerpt from Record 66 is a summary of what the government's arguments were. So the contrary, the district court at 81 through 84 discussed that there was a complete difference between the information that was presented to the magistrate in the affidavit and the information that was known by the officers who executed the search warrant. That information was known to those officers not just when they arrived on the scene, but prior to that, at the briefings prior to the execution of the warrant. And we know that because there are reports. There's an investigatory plan from Deputy Hulse. There's a separate investigatory plan from the Fresno Meth Task Force. And it's particularly important that the Fresno Meth Task Force is the one that searched Mr. Alcazar Barajas' home. And that's the reason why the district court's argument was that there was a complete   And so there are disputed interpretations here. I get that. But I'm not really finding that many disputed facts. So the one thing that's disputed, Your Honor, at least in terms of the ---- Maybe you can focus on that, because it seems to me it's clear that the officers got additional information after the search warrant. They didn't seek an expansion of the search warrant. And so ---- And it looks like in preparation to go out there, they prepared in a way that they thought there were two possible, you know, they, I mean, physically prepared for their safety to make two assaults or whatever. So ---- Correct, Your Honor. But my concern is I want to clarify that so the government has indicated that the district court said only that a violation occurred at the threshold when Mr. Alcazar Barajas was ordered out of his home at gunpoint. And that's not, in fact, what the district court found. The district court found that that was an improper seizure, but the district court also found that because the home was outside of the scope of the warrant, that was different than the affidavit. And that's at Excerpt of Record 82. Well, as I understood, then, what you're saying is, and this is the way I understood it until the counsel got up, that what was described in the warrant was not the trailer home that was surged. That's correct, absolutely. And that's the district court's finding. I mean, the district court states it over and over again. The Excerpt of Record that's cited by the government is simply a summary of the Eleventh Hour Declaration from Deputy Hulse, where he attempts to inject his subjective interpretation of which trailer home it was in. To the contrary, as the Court noted, there were two trailer homes, and the district court found that both of them had significant indicia of occupancy. They had driveways, they had cars outside. And in fact, they had people living in them. The — as to the Court's — So according — but according to the government, once the officers were there and they saw it was boarded up, they didn't need to go get — do anything else. They could just proceed as directed. Why isn't that — why doesn't that work? So neither of the trailers were boarded up, Your Honor. The two trailers to the northwest were both occupied. As it's described in the record, Joe DeMello's report from the Fresno Math Task Force is that excerpt of record — supplemental excerpt of record 175, it describes that there were two occupied trailers. The owner of the property, Eustelio Barajas Medina, was found in the other trailer. There's a separate driveway and car there. There's a car — or two cars in Mr. Alcazar Barajas's driveway and him in his home. And then other individuals were found in the main home. And so what government counsel is describing is Fresno Math Task Force prior surveillance where they saw one of the two trailers, although I don't think it's as clear which one it was, was boarded up in about a year-old surveillance. But what they knew is that there were two trailers there. They'd been assigned in both their own operations plan as well as the U.S. Marshal's operations plan to address those trailers. But they're not looking for your guy. They're looking for a fugitive with another name that's — right? Correct. But he shares some of the same name as your guy. But — so why doesn't the warrant extend to all structures on the property in which a fugitive might be hiding? Because that's not — that's not described in the affidavit. It's not described in the warrant. And actually distinct from Alexander, where there was a catch-all in the warrant where they could search all structures and properties, this warrant authorizes only the searching of those — of those structures described in this warrant. And that does not include Mr. Alcazar Barajas's home. As the Court noted, it was a different color. And at best, the government can argue that it's ambiguous. But you have officers whose knowledge of the property was not in any way ambiguous. If they learn that there's a 3-year-old in there and there's a gun in there, what are they supposed to do? So first — I mean, when we go to the exceptions. So first, they're not lawfully — they're not lawfully in his home. They've not — all the exceptions only apply if there's lawful presence. And there's not lawful presence here because the home is not described in the warrant. But as to the record in this case, so here's the sequence of events as was set forth by Officer Ortiz. Mr. Alcazar Barajas is ordered out of his home at gunpoint. So they can only — if they learn that there's a 3-year-old in there with a gun, they can't do anything because they weren't lawful in the first place? Is that your argument? So their knowledge of that is — their knowledge of that is learned after there's an improper seizure. And so the fruits of that should be suppressed. Now, the factual sequence here is important, too. If we get to the stage of dealing with the exceptions, because Officer Ortiz took the — took Mr. Alcazar to the perimeter, and then he went in and got the 3-year-old out. And at that point, there's no longer any danger. Even assuming that the Court found that there was a danger to having a firearm in a home with a child, when the child is sleeping, the firearm was unloaded, there was no further information to the officers, there's no exigency about that. There's certainly no exigency, nor a public safety exception, when the child has been brought out without incident. The officer then has the child out of the home, has Mr. Alcazar Barajas out of the home. When they retrieved the child from the home, they certainly didn't see any other exigent circumstances. They then go back in, flip over a mattress, and find an unloaded firearm. At that point, they've stretched well beyond the bounds of any of the exceptions, whether exigency or public safety. And in the case of the Leon, it's not Leon, okay? The court was asked to do a Leon analysis but did not. Your Honor, I disagree as to the Court's as to the Court was briefed and argued on Leon. The Court found that there was, in fact, Scienter, and as to the knowledge of the officer when they're searching the property. Okay. But I understand. I think it's undisputed that the officers knew more after they got the search warrant than when they went in. But that isn't the Leon standard. But it is, Your Honor, if the warrant does not facially describe it. Well, what evidence is there in the record that the officers, with that knowledge that they knew that, but what evidence is there in the record that they said, well, gosh, now we need to get another search warrant, we can't rely on that search warrant, and is it? But, Your Honor, that's not the standard of Leon. The standard of Leon is an objective officer. It doesn't require a subjective acknowledgment from the officers that they. Well, right. But I guess it isn't the same as, all right, I'm not saying that it's not relevant that they knew that information, but knowing that information doesn't preclude a Leon analysis. So, but if we step through that Leon analysis. Because let's say you know that information, but you still don't think you need to get anything else. You still think you have a lawful search warrant, and objectively, if the Supreme Court looked at it and said objectively, a reasonable officer would still think that they could do the search that they did. So, but under Maryland v. Garrison. I mean, that could save Leon, under Leon. So, Your Honor, I disagree, because under Maryland v. Garrison, the officers have an obligation to stop once there's any difference, any material difference in the warrant, the description versus what they come upon on the scene. Their knowledge of that and perhaps ignorance of what was actually in the warrant is not excused under a Leon analysis. They have an obligation to notify the magistrate when there's a material difference between what they're authorized to search under the warrant and what they're permitted to do. So, but to make Leon not applicable, it would have to be obvious to any objective officer that they were doing the wrong thing at that point. I mean, because the Court said the warrant was valid, there wasn't a Franks – they didn't have a Franks hearing as far as that goes. So for Leon not to apply, it has to be obvious to an objective officer that they were doing the wrong thing, that that was not a valid warrant. And in this case, that's what the Court found. But isn't it also important to suggest that, that what was described in the warrant was not the one they searched? Correct. That makes Leon not applicable here. And they had to – Because the officers at that point knew there were two noble homes, not one, knew that only one was allowed for search, and knew that the one that they were going to search was not described, and therefore Leon not applicable. Isn't that the analysis that Insure Court undertook? That's correct, Your Honor. I mean, that's why it seems to me that this point that the officers knew or didn't know is not as important as what was in the warrant. It seems to me that if what was described in the warrant was a different home than they went after, and they knew that going in, then there's no way for Leon to help them out. And that's exactly what the District Court found, Your Honor. Well, where in the record does it say, again, since counsel says, quite the opposite, that this was exactly the trailer described in the warrant, where do I find in the record that the District Court did not find that to be the house to be in the warrant, the one they searched? Your Honor, that's at supplemental – sorry, it's at excerpt of record 8182. Okay. I've got 8182, 8384. Correct. And it's also at 55 and 56 that the court describes the difference between the information known and presented to the magistrate, as well as the information in the operations plans. And additionally, in addition to the court's findings, this court can consider the operations plans of the Fresno Meth Task Force as well as the U.S. Marshals and compare that with the warrant. And they are facially different, and that sets us outside of the scope of the warrant. Well, it seems to me that if the seizure happens, and it seems to me that he's suggesting the seizure happens when the guy's ordered out of the house and he comes out, then exigent circumstances goes out the window because the seizure happens before the exception arises. If I go to inevitable discovery, again, because the seizure happens before the exception arises, then I've got good faith, and I'm left with Leon. And if, in fact, that house described in the warrant is not the house they searched, it doesn't seem Leon applies either. Is that your argument? Yes, Your Honor. So if I am just going to take another run at this, because it seems like the first case, Alexander applies, and then Leon applies, what's your direct response to that argument? I'm happy to address that, Your Honor. Alexander is a very limited exception to the warrant requirement that everything be, in particular, homes under Payton be particularly described. Alexander is significantly distinct from this case in a few ways. One, Alexander was a search for contraband, and the Alexander defendant was, in fact, the owner of the property and was the leader of this drug cocaine processing conspiracy. They had evidence of ether and acetone and cocaine packaging materials being delivered to the property. None of that is present in this case. Here we have a Stiegald warrant where both the Fresno Meth Task Force as well as the marshals acknowledged that they were looking for a fugitive that they, because they indicated Stiegald in their reports, believed was not an actual resident there, but was staying in someone else's home. That Stiegald information was not presented to the magistrate in the affidavit. But the Alexander case also has a catchall in it that says any and all search structures, et cetera. And so the Alexander court found in a limited holding that there was, that the trailer that the Alexander defendant was sleeping in was included in those. And finally, this Court in Mena v. City of Sammy Valley has indicated that there is no factual basis to fit through the Alexander limits. It can't simply be announcing that this is a ranch in a rural area. The district court, in fact, described this as a trailer, basically a mobile home park, and that's an excerpt from Record 85. And so simply announcing that this is in a rural area, even though this is, these are .39 miles off of a very heavily traveled road, does not accept the requirement that each of these homes be described with particularity. So the government, when they say, oh, no, the warrant authorized them to search every building. Not every building that's, I mean, so the buildings that were described in the warrant. And the government has offered their opinion as well as their agent's subjective interpretation well after the fact that they believe that that was, that trailer was described in the warrant. To the contrary, there are facts showing that it was not. And the district court found that it was, in fact, not. The district court had the benefit of testimony, live testimony from two agents, significant briefing on this, and correctly found that this was not supported by probable cause. And so why shouldn't the good faith apply here? Because the officers knew that this property was not described in the warrant. And under the Leon test, if the officers know, or it's substantially. You said, you referred to Leon, but you just said Leon doesn't even apply here. Well, so the good faith would require their lawful presence, but there's no, I think even, I mean, the district court was briefed on Leon issues, was, it was argued by the government that there certainly should not be an assumption that the district court did not consider that analysis just because the district court didn't make specific legal rulings about it. The district court is not obligated to respond to every argument thrown out by the government. And the district court here had considered that argument and found it to not apply. So I don't think a reasonable officer with knowledge of, you know, a careful review of the warrant here would say that this. What would be your best case? Do you have anything specific, fact specific, case wise? As to the Leon analysis, no, I do not, Your Honor, because I've never, we were unable to find any case where. Well, I'm inclined to agree with you if Judge D'Avola had thought that Leon saved the warrant, probably would have said so, but that, he didn't specifically say why Leon didn't. Correct, Your Honor, but I want to be clear, it was, it was briefed before that court. There was extensive briefing here. There are a lot of issues for the district court to deal with. And we can, we can reach it. And the district court did find that officers should have known that additional authorization was required before searching. Absolutely, at several stages through the process. Okay. Any additional questions? Okay. Thank you. Thank you, Your Honor. Do either of you have any additional questions of the government? All right. In light of, I appreciate both of you being prepared on this matter and answering the court's questions. And this matter will stand submitted.
judges: Callahan, N.R. Smith, Murguia